# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

Anna Juravin, Don Juravin,

and Anna Juravin and Don Juravin

as Guardians of Levia Juravin

and Ynes Juravin and United

Medical Group International, Inc.

                                                                                 Case No.

    Plaintiffs

    vs.

James Ryan, Esq., Bradley Saxton, Esq.,

Lauren Reynolds, Esq., and Dennis Kennedy, Trustee.

    Defendants

_____/

## Complaint

### for Violation of the Fourth Amendment to the United States,
### the Florida Constitutional Right of Privacy
### and the Common Law of Conversion.
### Demand for Jury Trial

Law Offices of  Henry Portner on behalf of Don Juravin ("Debtor"), Anna Juravin, Anna

Juravin as Guardian of Levia Juravin and Ynes Juravin, Minors, and United Medical Group

International Incorporated ("UMGI") ("Non Debtor")(collectively the "Moving Parties") hereby bring this Complaint against the Defendants, jointly, severally and in the alternative for violations under the Fourth Amendment to the United States Constitution for unreasonable search and seizures, for violation of the Florida Constitutional Right of Privacy and Common Law on Conversion, and to exclude evidence confiscated in violation of the attorney client privilege and attorney work product doctrines.

## I. <u>Parties</u>

1. Plaintiffs, Anna Juravin and Don Karl Juravin are husband and wife and reside in Lake County, Florida.

2. Plaintiff Anna Juravin and Don Karl Juravin are the legal guardians and parents of their two children Levia Juravin and Ynes Juravin. The children reside with their parents in Lake County, Florida.

3. Plaintiff United Medical Group, International, Inc. is a corporation domesticated in Florida and whose sole shareholder is Anna Juravin.

4. Defendant Dennis Kennedy is a locally appointed trustee who was nominated by the Office of the United States Bankruptcy Trustees to serve as a local trustee in the bankruptcy proceeding of In Re: Don Karl Juravin (Plaintiff herein) heretofore filed in the United States Bankruptcy Court for the Middle District of Florida, Orlando Vicinage, under Case No. 6:18-bk-06821-KSJ.

5. Defendants, James Ryan, Brad Saxton and Lauren Kennedy are all attorneys at law of the State of Florida and have been appointed to serve as legal counsel for the Trustee in the Juravin Bankruptcy.

## II. <u>Jurisdiction</u>

6.  Federal Jurisdiction is based upon the Fourth Amendment to the United States Constitution.  Pendant claims for violation of the Florida Constitutional Right of Privacy and Common Law Conversion are set forth in additional Counts to this Complaint.

1.  Background

7.  On April 29, 2021 the United States Bankruptcy Court for the Middle District of Florida entered an Order Granting Trustee's Motion Under Seal for Break Order to Take Possession of Debtor Property (DE# 502).  The Motion was brought before the Court by Dennis D. Kennedy, the Chapter 7 Trustee in the Juravin Bankruptcy. The Order provided that "under the protection of the U.S. Marshall Service for the Middle District of Florida, to obtain access and to retrieve property of the Debtor and of this bankruptcy estate."

8.  The Order was specific as to its terms and in Paragraph 3 itemized the Property of the Estate which were to be retrieved. Specifically., the "Property" allowed to be retrieved was:

   a.  All business records (including passwords for electronically stored information) belonging to the ROCA Labs Entities and the Sold Entities, including without limitation ROCA Labs, Inc. ROCA Labs Nutraceutical USA, Inc. Juravin Inc.

   b.  All electronic communications devices on the Premises containing information about the Debtor, the Debtor's b usiness interests, or property of the bankruptcy estate.

   c.  Debtor's wristwatch collection.

   d.  Any additional items Trustee, in his sole discretion, reasonably believes to be part of the bankruptcy estate.

9.  The Order notes in Footnote 4 that the Debtor was then incarcerated in the Lake County jail serving the remainder of a thirty day sentence.

10. The Break Order was thereafter executed with the U.S. Marshals in all their force and effect, armed with deadly weaponry at a time that only Mrs. Juravin and her two children were present.   The emotional impact on the Juravin family was one of horror and immense fear and no advance notice was given to the Debtor's family.

11. Four persons besides the U.S. Marshall were present at the residence of the Moving Parties during the execution of the Break Order.   They were, James Ryan, Esq., Bradley Saxton, Esq., Lauren Reynolds, Esq., and Dennis Kennedy, Trustee.

12. The Trustee representatives were at the residence for over five hours, with a cumulative work force equivalent to 20 man hours and left nothing undisturbed. In that regard they had more than adequate time to determine what property was Property of the Estate, and what property was not Property of the Estate.   Particularly in regard to items of personal property and written documents, they were opened and reviewed for inspection.   While understandably electronic computers and communication devices, being in electronic format were not on the spot easily decipherable and their confiscation more easily understood. However, by way of example, the pocketbook, after being opened and inspected of Mrs. Juravin was confiscated. Mrs. Juravin's medical records were confiscated.   The papers regarding their pets and treatment regimens were confiscated. The family background papers of Mrs. Juravin's family in Poland were confiscated. Non-Debtor corporate records, and minutes clearly identified as such were confiscated.

13. Work product of UMGI was also confiscated consisting of detailed research, investigations and study materials directly incident to its ongoing business and which was considered highly confidential, proprietary intellectual property and trade secrets and in which countless hours of research and investigation were undertaken. The value of such

confiscated documents were material and substantial, and the absence of which infinitely delayed bringing to market its intended products.

14. Documents concerning ongoing litigation between Mrs. Juravin and the Bella Collina Homeowners were confiscated and in fact, were later used by James Ryan, counsel for the Trustee at Mrs. Juravin's continuing Rule 2004 Examination and presented as an Exhibit for questioning.

15. On Exhibit "A" hereto is a list of Property of the Moving Parties confiscated which remains subject to amendment for additional items if formal discovery is permitted.

16. The terms and conditions of the Order were clear.   The only latitude given was the part of the Order that stated: "Any additional items Trustee, in his sole discretion reasonably believes to be part of the bankruptcy estate."   The above enumerated items, such as Mrs. Juravin's medical records, and family heritage papers or their pets' medical records are, beyond any argument seemingly to the contrary, beyond cavil, were not Property of the Estate.

17. The Moving Parties herein aver that the enumerated items above, and that set forth by way of Exhibit "A" hereto were confidential.   It is not argued that their initial inspection rights at the residence were not within the scope of the Order, but once an identification of the property could be made that such items were no longer subject to the Break Order, they were clearly not items that could be confiscated by the Trustee.   If the response is that the Trustee did not have time to look through everything, this untenable excuse no longer remains once the inventory was taken.

18. Even more problematic is that the non-debtor items taken and referred to herein, were not identified in the Trustee's List of Inventory (DE#497) as they most definitely should have

been and remained confiscated some five months after the Order was executed. Federal
Discovery most often uses a bates stamping system, where every document is identified and
labeled.   Even the most cursory of examination would have afforded time to separate
permissible debtor items from non-debtor items, with the immediately return of non debtor
items. Simply, the items of personal property, records and files taken were confidential and
the private property of the Moving Parties, and beyond peradventure, that of Mrs. Juravin
or Non-Debtor entities.

19. The relationships between the Trustee and his appointed counsel evidences a complete lack
of respect for the concept of independence, but more, speaks of the breach of a fiduciary
relationship that is ordinarily to be time honored for a bankruptcy debtor.   Such is not the
case sub judice.

20. The Court may take notice that it was James Ryan and Brad Saxton who participated in the
break order inspection. Their participation evidence a conflict, to wit, DCS, who is paying
their fees both to be trustee's legal counsel, and well as fees their firm receives in
representing DCS and Bella Colla (controlled by DCS) to sue the Debtor and Mrs. Juravin.
Attached is a list of court cases evidencing such representation (Exhibit "B").

21. If ever there was a conflict of interest, this should be the noted case. The Trustee in this
instance uses the power invested in him, to retain the Debtors fiercest enemies, and retains
two attorneys, who represent DCS and who continue to be paid by DCS, with the imprimatur
now of a United States Bankruptcy Judge and the US Marshalls service.

22. In this instance, they exceeded their clear and delineated authority. The trustee's and his
counsels' actions with respect to the personal property, files and records enumerated herein
and in Exhibit "A" violated and continue to violate their privacy rights under the Florida

Constitution and the Fourth Amendment to the United States Constitution and, as to the trustee's counsel, the Florida Rules of Professional Conduct, and constitute conversion.

23. Sought herein to be excluded from evidence is the trustee's unlawfully obtained evidence, client/attorney privileged documents and attorney work product, as well as to require that the trustee and his counsel account for every item of personal property, files or records then or now Property of the Estate.

### III. Analysis

24. "The court, after notice and a hearing, may remove a trustee ... for cause."   § 324(a).   The Bankruptcy Code does not define "cause," but it is "well-established that `cause' may include trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or   lack of disinterestedness or holding an interest adverse to the   estate."   In re AFI Holding, Inc., 355 B.R. 139, 148 (9th Cir.   BAP 2006), aff'd and adopted, 530 F.3d 832 (9th Cir. 2008) A trustee is the legal representative and fiduciary of the bankruptcy estate. Id. at 147.   His or her primary role is to marshal and sell assets so that their value may be distributed to creditors.   Id. at 148.   To that end, a trustee has an affirmative duty to investigate the debtor's financial affairs.   11 U.S.C. §§ 704(4), 1106(a)(3).   The trustee at all times must act without regard to his own interests or those of any particular creditor, AFI Holding, 355 B.R. at 147, 148, and must   act with "that measure of care and diligence that an ordinary   prudent person would exercise under similar circumstances." In re Rigden, 795 F.2d 727, 730 (9th Cir. 1986).

25. The Moving Parties seek damages with respect to confiscation of their personal and non-debtor business records, which they allege violated their state constitutional right of privacy

(Article I, section 12 of the Florida Constitution), their rights under the Fourth Amendment to the United States Constitution, and their rights emanating under common law as reviewed hereunder.

### First Count – Violation of Fourth Amendment

26. On April 29, 2021, the United States Bankruptcy Court for the Middle District of Florida entered an Order Granting Trustee's Motion Under Seal for Break Order to Take Possession of Debtor Property (DE# 502).   The Motion was brought before the Court by Dennis D. Kennedy, the Chapter 7 Trustee in the Juravin Bankruptcy. The Order provided that "under the protection of the U.S. Marshall Service for the Middle District of Florida, to obtain access and to retrieve property of the Debtor and of this bankruptcy estate."

27. The Order was specific as to its terms and in Paragraph 3 itemized the Property of the Estate which were to be retrieved. Specifically., the "Property" allowed to be retrieved was:

    a. All business records (including passwords for electronically stored information) belonging to the ROCA Labs Entities and the Sold Entities, including without limitation ROCA Labs, Inc. ROCA Labs Nutraceutical USA, Inc. Juravin Inc.

    b. All electronic communications devices on the Premises containing information about the Debtor, the Debtor's business interests, or property of the bankruptcy estate.

    c. Debtor's wristwatch collection.

    d. Any additional items Trustee, in his sole discretion, reasonably believes to be part of the bankruptcy estate.

28. The Order notes in Footnote 4 that the Debtor was then incarcerated in the Lake County jail

serving the remainder of a thirty-day sentence.

29. The Break Order was thereafter executed with the U.S. Marshals in all their force and effect, armed with deadly weaponry at a time that only Mrs. Juravin and her two children were present.  The emotional impact on the Juravin family was one of horror and immense fear and no advance notice was given to the Debtor's family.

30. Four persons besides the U.S. Marshall were present at the residence of the Moving Parties during the execution of the Break Order.  They were, James Ryan, Esq., Bradley Saxton, Esq., Lauren Reynolds, Esq., and Dennis Kennedy, Trustee.

31. The Trustee representatives were at the residence for over five hours, with a cumulative work force equivalent to 20-man hours and left nothing undisturbed. In that regard they had more than adequate time to determine what property was Property of the Estate, and what property was not Property of the Estate.   Particularly in regard to items of personal property and written documents, they were opened and reviewed for inspection.   While understandably electronic computers and communication devices, being in electronic format were not on the spot easily decipherable and their confiscation more easily understood. However, by way of example, the pocketbook, after being opened and inspected of Mrs. Juravin was confiscated. Mrs. Juravin's medical records were confiscated.  The papers regarding their pets and treatment regimens were confiscated. The family background papers of Mrs. Juravin's family in Poland were confiscated. Non-Debtor corporate records, and minutes clearly identified as such were confiscated.

32. Work product of UMGI was also confiscated consisting of detailed research, investigations and study materials directly incident to its ongoing business and which was considered highly confidential, proprietary intellectual property and trade secrets and in which

countless hours of research and investigation were undertaken. The value of such confiscated documents were material and substantial, and the absence of which infinitely delayed bringing to market its intended products.

33. Documents concerning ongoing litigation between Mrs. Juravin and the Bella Collina Homeowners were confiscated and in fact, were later used by James Ryan, counsel for the Trustee at Mrs. Juravin's continuing Rule 2004 Examination and presented as an Exhibit for questioning.

34. On Exhibit "A" hereto is a list of Property of the Moving Parties confiscated which remains subject to amendment for additional items if formal discovery is permitted.

35. The terms and conditions of the Order were clear. The only latitude given was the part of the Order that stated: "Any additional items Trustee, in his sole discretion reasonably believes to be part of the bankruptcy estate." The above enumerated items, such as Mrs. Juravin's medical records, and family heritage papers or their pets' medical records are, beyond any argument seemingly to the contrary, beyond cavil, were not Property of the Estate.

36. The Moving Parties herein aver that the enumerated items above, and that set forth by way of Exhibit "A" hereto were confidential. It is not argued that their initial inspection rights at the residence were not within the scope of the Order, but once an identification of the property could be made that such items were no longer subject to the Break Order, they were clearly not items that could be confiscated by the Trustee. If the response is that the Trustee did not have time to look through everything, this untenable excuse no longer remains once the inventory was taken.

37. Even more problematic is that the non-debtor items taken and referred to herein, were not

identified in the Trustee's List of Inventory (DE#497) as they most definitely should have been and remained confiscated some five months after the Order was executed. Federal Discovery most often uses a bates stamping system, where every document is identified and labeled. Even the most cursory of examination would have afforded time to separate permissible debtor items from non-debtor items, with the immediately return of non-debtor items. Simply, the items of personal property, records and files taken were confidential and the private property of the Moving Parties, and beyond peradventure, that of Mrs. Juravin or Non-Debtor entities.

38. The relationships between the Trustee and his appointed counsel evidences a complete lack of respect for the concept of independence, but more, speaks of the breach of a fiduciary relationship that is ordinarily to be time honored for a bankruptcy debtor. Such is not the case sub judice.

39. The Court may take notice that it was James Ryan and Brad Saxton who participated in the break order inspection. Their participation evidence a conflict, to wit, DCS, who is paying their fees both to be trustee's legal counsel, and well as fees their firm receives in representing DCS and Bella Colla (controlled by DCS) to sue the Debtor and Mrs. Juravin. Attached is a list of court cases evidencing such representation (Exhibit "B").

40. If ever there was a conflict of interest, this should be the noted case. The Trustee in this instance uses the power invested in him, to retain the Debtors fiercest enemies, and retains two attorneys, who represent DCS and who continue to be paid by DCS, with the imprimatur now of a United States Bankruptcy Judge and the US Marshalls service.

41. In this instance, they exceeded their clear and delineated authority. The trustee's and his counsels' actions with respect to the personal property, files and records enumerated herein

and in Exhibit "A" violated and continue to violate their privacy rights under the Florida Constitution and the Fourth Amendment to the United States Constitution and, as to the trustee's counsel, the Florida Rules of Professional Conduct, and constitute conversion.

42. Sought herein to be excluded from evidence is the trustee's unlawfully obtained evidence, client/attorney privileged documents and attorney work product, as well as to require that the trustee and his counsel account for every item of personal property, files or records then or now Property of the Estate.

43. The party charging a violation of the Fourth Amendment "must show that he had a reasonable expectation of privacy in the place searched." United States v. Hoencamp, 482 F.3d 1142, 1146 (2007), citing Rakes v. Illinois, 439 U.S. 128, 143 (1978).   "An individual has a reasonable expectation of privacy if he can demonstrate a subjective expectation that his activities would be private, and he [can] show that his expectation was one that   society is prepared to recognize as reasonable.'" Hoencamp, 482 F.3d at 1146, citing United States v. Bautista, 362 F.3d 584, 589 (9th Cir. 2004).

44. Among the factors the court may consider are

1. the [individual's] possessory interest in the property   searched or seized, see United States v. Broadhurst, 805 F.2d 849, 852 n.2 (9th Cir. 1986), the measures taken by the defendant to insure privacy, see id.,   whether the materials are in a container labeled as   being private, see id., and the presence or absence of   a right to exclude others from access, see Bautista, 362 F.3d at 589. Hoencamp, 482 F.3d at 1146.

45. As a result of the Defendants actions, as aforesaid, the Plaintiffs have sustained immense harm, damage and injury.

1. WHEREFORE, the Plaintiff pray that this Honorable Court:

a. Issue an Order excluding from evidence those tainted documents due to the unreasonable search and seizure and confiscation and violations of attorney client privilege and attorney work product doctrines.

b. Compensatory Damages in such amount as may reasonably and properly compensate the Plaintiffs under the laws of the United States of America which they verily believe now exceeds Ten Million Dollars ($10,000,000.00).

c. Punitive Damages as determined by a jury.

d. Attorneys fees as may be awarded by the Court.

e. Costs of Suit.

f. Such other and further relief as the court may deem equitable and just.

## Second Count – Violation of Florida Constitution.

46. On April 29, 2021 the United States Bankruptcy Court for the Middle District of Florida entered an Order Granting Trustee's Motion Under Seal for Break Order to Take Possession of Debtor Property (DE# 502).   The Motion was brought before the Court by Dennis D. Kennedy, the Chapter 7 Trustee in the Juravin Bankruptcy. The Order provided that "under the protection of the U.S. Marshall Service for the Middle District of Florida, to obtain access and to retrieve property of the Debtor and of this bankruptcy estate."

47. The Order was specific as to its terms and in Paragraph 3 itemized the Property of the Estate which were to be retrieved. Specifically., the "Property" allowed to be retrieved was:

a. All business records (including passwords for electronically stored information) belonging to the ROCA Labs Entities and the Sold Entities, including without limitation ROCA Labs, Inc. ROCA Labs Nutraceutical USA, Inc. Juravin Inc.

    b.  All electronic communications devices on the Premises containing information about the Debtor, the Debtor's business interests, or property of the bankruptcy estate.

    c.  Debtor's wristwatch collection.

    d.  Any additional items Trustee, in his sole discretion, reasonably believes to be part of the bankruptcy estate.

48. The Order notes in Footnote 4 that the Debtor was then incarcerated in the Lake County jail serving the remainder of a thirty day sentence.

49. The Break Order was thereafter executed with the U.S. Marshals in all their force and effect, armed with deadly weaponry at a time that only Mrs. Juravin and her two children were present.  The emotional impact on the Juravin family was one of horror and immense fear and no advance notice was given to the Debtor's family.

50. Four persons besides the U.S. Marshall were present at the residence of the Moving Parties during the execution of the Break Order.  They were, James Ryan, Esq., Bradley Saxton, Esq., Lauren Reynolds, Esq., and Dennis Kennedy, Trustee.

51. The Trustee representatives were at the residence for over five hours, with a cumulative work force equivalent to 20 man hours and left nothing undisturbed. In that regard they had more than adequate time to determine what property was Property of the Estate, and what property was not Property of the Estate.  Particularly in regard to items of personal property and written documents, they were opened and reviewed for inspection.  While understandably electronic computers and communication devices, being in electronic format were not on the spot easily decipherable and their confiscation more easily understood. However, by way of example, the pocketbook, after being opened and inspected

of Mrs. Juravin was confiscated. Mrs. Juravin's medical records were confiscated.   The papers regarding their pets and treatment regimens were confiscated. The family background papers of Mrs. Juravin's family in Poland were confiscated. Non-Debtor corporate records, and minutes clearly identified as such were confiscated.

52. Work product of UMGI was also confiscated consisting of detailed research, investigations and study materials directly incident to its ongoing business and which was considered highly confidential, proprietary intellectual property and trade secrets and in which countless hours of research and investigation were undertaken. The value of such confiscated documents were material and substantial, and the absence of which infinitely delayed bringing to market its intended products.

53. Documents concerning ongoing litigation between Mrs. Juravin and the Bella Collina Homeowners were confiscated and in fact, were later used by James Ryan, counsel for the Trustee at Mrs. Juravin's continuing Rule 2004 Examination and presented as an Exhibit for questioning.

54. On Exhibit "A" hereto is a list of Property of the Moving Parties confiscated which remains subject to amendment for additional items if formal discovery is permitted.

55. The terms and conditions of the Order were clear.   The only latitude given was the part of the Order that stated: "Any additional items Trustee, in his sole discretion reasonably believes to be part of the bankruptcy estate."   The above enumerated items, such as Mrs. Juravin's medical records, and family heritage papers or their pets' medical records are, beyond any argument seemingly to the contrary, beyond cavil, were not Property of the Estate

56. The Moving Parties herein aver that the enumerated items above, and that set forth by way

of Exhibit "A" hereto were confidential.   It is not argued that their initial inspection rights at the residence were not within the scope of the Order, but once an identification of the property could be made that such items were no longer subject to the Break Order, they were clearly not items that could be confiscated by the Trustee.   If the response is that the Trustee did not have time to look through everything, this untenable excuse no longer remains once the inventory was taken.

57. Even more problematic is that the non-debtor items taken and referred to herein, were not identified in the Trustee's List of Inventory (DE#497) as they most definitely should have been and remained confiscated some five months after the Order was executed. Federal Discovery most often uses a bates stamping system, where every document is identified and labeled.   Even the most cursory of examination would have afforded time to separate permissible debtor items from non-debtor items, with the immediately return of non-debtor items. Simply, the items of personal property, records and files taken were confidential and the private property of the Moving Parties, and beyond peradventure, that of Mrs. Juravin or Non-Debtor entities.

58. The relationships between the Trustee and his appointed counsel evidences a complete lack of respect for the concept of independence, but more, speaks of the breach of a fiduciary relationship that is ordinarily to be time honored for a bankruptcy debtor.   Such is not the case sub judice.

59. The Court may take notice that it was James Ryan and Brad Saxton who participated in the break order inspection. Their participation evidence a conflict, to wit, DCS, who is paying their fees both to be trustee's legal counsel, and well as fees their firm receives in representing DCS and Bella Colla (controlled by DCS) to sue the Debtor and Mrs. Juravin.

Attached is a list of court cases evidencing such representation (Exhibit "B").

60. If ever there was a conflict of interest, this should be the noted case. The Trustee in this instance uses the power invested in him, to retain the Debtors fiercest enemies, and retains two attorneys, who represent DCS and who continue to be paid by DCS, with the imprimatur now of a United States Bankruptcy Judge and the US Marshalls service.

61. In this instance, they exceeded their clear and delineated authority. The trustee's and his counsels' actions with respect to the personal property, files and records enumerated herein and in Exhibit "A" violated and continue to violate their privacy rights under the Florida Constitution and the Fourth Amendment to the United States Constitution and, as to the trustee's counsel, the Florida Rules of Professional Conduct, and constitute conversion.

62. Sought herein to be excluded from evidence is the trustee's unlawfully obtained evidence, client/attorney privileged documents and attorney work product, as well as to require that the trustee and his counsel account for every item of personal property, files or records then or now Property of the Estate.

63. The elements of a claim for violation of the Florida constitutional right of privacy are "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."

64. "What is reasonable, of course, `depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'" Id., quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985).

65. The nature of the confiscated material had absolutely nothing to do with the Debtor's bankruptcy estate.   Mrs. Juravin's and her children's medical records have nothing to do with the Debtor's bankruptcy estate.

66. As a direct result of the Defendants wrongful conduct, the Plaintiffs have and continue to sustain irreparable harm, injury and injury.

1. WHEREFORE, the Plaintiff pray that this Honorable Court:

2. Issue an Order excluding from evidence those tainted documents due to the invasion or privacy under the Florida Constitution and confiscation and violations of attorney client privilege and attorney work product doctrines.

3. Compensatory Damages in such amount as may reasonably and properly compensate the Plaintiffs under the laws of the United States of America and the State of Florida which they verily believe now exceeds Ten Million Dollars ($10,000,000.00).

4. Punitive Damages as determined by a jury.

5. Attorney's fees as may be awarded by the Court.

6. Costs of Suit.

7. Such other and further relief as the court may deem equitable and just.

## **Third Count – Common Law Conversion**

67. On April 29, 2021 the United States Bankruptcy Court for the Middle District of Florida entered an Order Granting Trustee's Motion Under Seal for Break Order to Take Possession of Debtor Property (DE# 502).   The Motion was brought before the Court by Dennis D. Kennedy, the Chapter 7 Trustee in the Juravin Bankruptcy. The Order provided that "under the protection of the U.S. Marshall Service for the Middle District of Florida, to obtain access and

to retrieve property of the Debtor and of this bankruptcy estate."

68. The Order was specific as to its terms and in Paragraph 3 itemized the Property of the Estate which were to be retrieved. Specifically., the "Property" allowed to be retrieved was:

   a. All business records (including passwords for electronically stored information) belonging to the ROCA Labs Entities and the Sold Entities, including without limitation ROCA Labs, Inc. ROCA Labs Nutraceutical USA, Inc. Juravin Inc.

   b. All electronic communications devices on the Premises containing information about the Debtor, the Debtor's business interests, or property of the bankruptcy estate.

   c. Debtor's wristwatch collection.

   d. Any additional items Trustee, in his sole discretion, reasonably believes to be part of the bankruptcy estate.

69. The Order notes in Footnote 4 that the Debtor was then incarcerated in the Lake County jail serving the remainder of a thirty-day sentence.

70. The Break Order was thereafter executed with the U.S. Marshals in all their force and effect, armed with deadly weaponry at a time that only Mrs. Juravin and her two children were present. The emotional impact on the Juravin family was one of horror and immense fear and no advance notice was given to the Debtor's family.

71. Four persons besides the U.S. Marshall were present at the residence of the Moving Parties during the execution of the Break Order. They were, James Ryan, Esq., Bradley Saxton, Esq., Lauren Reynolds, Esq., and Dennis Kennedy, Trustee.

72. The Trustee representatives were at the residence for over five hours, with a cumulative work force equivalent to 20-man hours and left nothing undisturbed. In that regard they had more than adequate time to determine what property was Property of the Estate, and what property

was not Property of the Estate.   Particularly in regard to items of personal property and written documents, they were opened and reviewed for inspection.   While understandably electronic computers and communication devices, being in electronic format were not on the spot easily decipherable and their confiscation more easily understood. However, by way of example, the pocketbook, after being opened and inspected of Mrs. Juravin was confiscated. Mrs. Juravin's medical records were confiscated.   The papers regarding their pets and treatment regimens were confiscated. The family background papers of Mrs. Juravin's family in Poland were confiscated. Non-Debtor corporate records, and minutes clearly identified as such were confiscated.

73. Work product of UMGI was also confiscated consisting of detailed research, investigations and study materials directly incident to its ongoing business and which was considered highly confidential, proprietary intellectual property and trade secrets and in which countless hours of research and investigation were undertaken. The value of such confiscated documents was material and substantial, and the absence of which infinitely delayed bringing to market its intended products.

74. Documents concerning ongoing litigation between Mrs. Juravin and the Bella Collina Homeowners were confiscated and in fact, were later used by James Ryan, counsel for the Trustee at Mrs. Juravin's continuing Rule 2004 Examination and presented as an Exhibit for questioning.

75. On Exhibit "A" hereto is a list of Property of the Moving Parties confiscated which remains subject to amendment for additional items if formal discovery is permitted.

76. The terms and conditions of the Order were clear.   The only latitude given was the part of the Order that stated: "Any additional items Trustee, in his sole discretion reasonably believes to

be part of the bankruptcy estate." The above enumerated items, such as Mrs. Juravin's medical records, and family heritage papers or their pets' medical records are, beyond any argument seemingly to the contrary, beyond cavil, were not Property of the Estate.

77. The Moving Parties herein aver that the enumerated items above, and that set forth by way of Exhibit "A" hereto were confidential.  It is not argued that their initial inspection rights at the residence were not within the scope of the Order, but once an identification of the property could be made that such items were no longer subject to the Break Order, they were clearly not items that could be confiscated by the Trustee.  If the response is that the Trustee did not have time to look through everything, this untenable excuse no longer remains once the inventory was taken.

78. Even more problematic is that the non-debtor items taken and referred to herein, were not identified in the Trustee's List of Inventory (DE#497) as they most definitely should have been and remained confiscated some five months after the Order was executed. Federal Discovery most often uses a bates stamping system, where every document is identified and labeled. Even the most cursory of examination would have afforded time to separate permissible debtor items from non-debtor items, with the immediately return of non-debtor items. Simply, the items of personal property, records and files taken were confidential and the private property of the Moving Parties, and beyond peradventure, that of Mrs. Juravin or Non-Debtor entities.

79. The relationships between the Trustee and his appointed counsel evidences a complete lack of respect for the concept of independence, but more, speaks of the breach of a fiduciary relationship that is ordinarily to be time honored for a bankruptcy debtor.  Such is not the case sub judice.

80. The Court may take notice that it was James Ryan and Brad Saxton who participated in the

break order inspection. Their participation evidence a conflict, to wit, DCS, who is paying their fees both to be trustee's legal counsel, and well as fees their firm receives in representing DCS and Bella Collina (controlled by DCS) to sue the Debtor and Mrs. Juravin. Attached is a list of court cases evidencing such representation (Exhibit "B").

81. If ever there was a conflict of interest, this should be the noted case. The Trustee in this instance uses the power invested in him, to retain the Debtors fiercest enemies, and retains two attorneys, who represent DCS and who continue to be paid by DCS, with the imprimatur now of a United States Bankruptcy Judge and the US Marshalls service.

82. In this instance, they exceeded their clear and delineated authority. The trustee's and his counsels' actions with respect to the personal property, files and records enumerated herein and in Exhibit "A" violated and continue to violate their privacy rights under the Florida Constitution and the Fourth Amendment to the United States Constitution and, as to the trustee's counsel, the Florida Rules of Professional Conduct, and constitute conversion.

83. Sought herein to be excluded from evidence is the trustee's unlawfully obtained evidence, client/attorney privileged documents and attorney work product, as well as to require that the trustee and his counsel account for every item of personal property, files, or records then or now Property of the Estate.

84. The elements of a claim for violation of the Florida constitutional right of privacy are "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."

85. "What is reasonable, of course, `depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'" Id., quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985).

86. The nature of the confiscated material had absolutely nothing to do with the Debtor's bankruptcy estate. Mrs. Juravin's and her children's medical records have nothing to do with the Debtor's bankruptcy estate.

87. As a direct result of the Defendants wrongful conduct, the Plaintiffs have and continue to sustain irreparable harm, injury and injury.

88. The court looks to state law to determine whether a conversion has occurred. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 n.16 (9th Cir. 2001), citing In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999). The elements of a conversion in Florida are (1) the plaintiff's ownership or right to possession of property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.

89. In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (i) specific and identifiable property; (2) possession or an immediate right to possess that property; (3) an unauthorized act which deprives plaintiff of that property; and (4) a demand for return of the property and a refusal to do so. See Navid v. Uiterwyk Corp., 130 B.R. 594, 595-596 (M.D.Fla.1991); see also Challa v. Challa (In re Challa), 186 B.R. 750, 759 (Bankr.M.D.Fla.1995) • Neither knowledge nor intent are required. In re Ghana, 186 B.R. 750, 759 ("Additionally, courts have found that 'neither knowledge nor intent' is required to maintain an action for conversion"); Navid, 130 B.R. 594, 596 (accord); Florida Farm Bureau Casualty Ins. Co. u. Patterson, 611 So. 2d 558, 559 (Fla. 1st DCA 1992) (accord); Eagle v. Benefield-Chappell, Inc., 476 So. 2d 716, 718 (Fla. 4th DCA 1985) ("Liability for conversion does not require proof of knowledge or intent to deprive one of his property"); In other words,

90. "[t]he tort may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession." Seymour v. Adams, 638  So. 2d 1044, 1047 (Fla. 5th   DCA   1994); City of Cars, Inc. v. Simms, 526 So. 2d 119, 120   (Fla. 5th DCA),   rev. denied, 534 So. 2d 4o1 (Fla.1988) ("Any act of a person in asserting a   right of dominion over a chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession to which the owner is entitled may constitute   a conversion, whether the act is accomplished with, or without, any specific wrongful   mental intent"). Evidence of wrongful intent need only be established where punitive damages are sought in connection with the tort. See *1265 Ciamar Marcy, Inc. v.   Monteiro Da Costa, 508 So. 2d 1282, 1283-1284 (Fla. 3rd DCA 1987); see also Sporting Goods Distribs. v. Whitney, 498 F. Supp. 1088, 1092 (N.D.Fla. 1980) (holding that punitive   damages are appropriate on a conversion claim "where the circumstances surrounding the   conversion are such to show fraud, actual malice, deliberate violence, or oppression, or   such gross negligence as to indicate a wanton disregard of the rights of others") (internal   citations and quotations omitted); Foley v. Dick, 436 So. 2d 139, 141 (Fla. 2nd   DCA   1983).

91. The Moving Parties cite as precedent In re Truck-A-Way, 300 B.R. 31 (E.D. Cal. 2003), in which an attorney for a chapter 7 trustee obtained an order purportedly authorizing him to enter and search certain residences and to seize items that were property of the estate.   The attorney had the presence of armed deputy U.S. Marshals to gain entrance to a private residence occupied by a mother with her two small children.   The resulting search encompassed a bedroom and included dressers and other personal belongings.   The attorney seized the titles to two vehicles and a

key for a storage locker, from which he seized 2 boxes of documents.   The court, noting that the attorney's actions were "unlike anything to come before this court," 300 B.R. at 35, disqualified counsel.   Id. at 40.

92. The Truck-A-Way case is quite indicative of the facts present now before this court. Indeed, its facts are so glaringly similar.   See also United States v. Comprehensive Drug Testing, Inc., 2009 U.S. App. LEXIS 19119 (9th Cir. 2009) that examines in detail the obligation to faithfully observe the direction and guidelines of a Federal Subpoena.

93. Equally troublesome was the Trustee's and counsel's cavalier inventory of the confiscated assets.   While the Court carefully delineated the ambit and scope of the debtor inquiry in its Order of June 16, 2021 (DE#526) it clearly indicated the medical records of the parties were not relevant. Still to this day, such records have not been either recognized on the Inventory.

94. After the execution of the Break Order the Trustee itemized the following Inventory seized (DE#597-1)

WRISTWATCHES / DOCUMENTS / BOXES

    a.   Three [3] wristwatches – Breitling

    b.   Documents from primary bedroom

    c.   Documents and flower tote bag containing them

    d.   Documents in box from garage and box containing them

    e.   Two [2] purple boxes from garage and their contents

    f.   Documents from office area in garage

g. Documents from office area inside the home [inside to the right]

h. Documents from hutch in office

i. Documents in plastic box and box containing them

j. This Inventory was filed in May 2021. It is now October 2021, and the Trustee has yet to acknowledge, or account for the Moving Parties Property which has absolutely nothing to do with the Debtor's finances. There was no reason or justification for the Trustee's retention of non-debtor.

95. The Trustee and his counsel have a responsibility to carry out their duties as officers of this Honorable Court with the dignity and grace to which the court so justly deserves. But they have gone to afar of their mission and duty.

96. As a result of wrongful act of Conversion by the Defendants, the Plaintiffs have sustained irreparable harm, injury and damage.

97. WHEREFORE, the Plaintiff pray that this Honorable Court:

a. Issue an Order excluding from evidence those tainted documents due to the conversion under the Florida Law and confiscation and violations of attorney client privilege and attorney work product doctrines.

b. Compensatory Damages in such amount as may reasonably and properly compensate the Plaintiffs under the laws of the United States of America and the State of Florida which they verily believe now exceeds Ten Million Dollars ($10,000,000.00).

c. Punitive Damages as determined by a jury.

d. Attorney's fees as may be awarded by the Court.

e. Costs of Suit.

f.   Such other and further relief as the court may deem equitable and just.

Dated: October 18, 2021

Law Offices of Henry Portner
s/ Henry Portner, Esquire
portnerlaw@gmail.com
FL Bar # 0883050
Tel: 561 400 0027

## **Demand for Jury Trial**

Plaintiffs hereby demand a Trial by Jury as to all Counts of the Complaint so triable.

Dated: October 18, 2021

Law Offices of Henry Portner
s/ Henry Portner, Esquire
portnerlaw@gmail.com
FL Bar # 0883050
Tel: 561 400 0027

# EXHIBIT "A"

## Break Order Property of  Anna Juravin and Non Debtors Confiscated and Converted

## ANNA JURAVIN

1.  Anna Juravin individual personal bank information current and from Poland before living in the US
2.  Personal documents from Poland before marriage with Don
3.  Non Debtor Bank Account Information
4.  Copies of passports
    a.  Magda (Anna's sister)
    b.  Children passport copies
    c.  Housekeeper's from over 10 years ago
5.  Anna Juravin Blank checks from her personal bank accounts
6.  Medical records
    a.  Immunization records
    b.  General medical documents
7.  Medical intimate female records of Anna Juravin - Abortion records
8.  Medical information from Israel before moving to US - hospital
9.  Family documents from Israel before moving to US
10. Attorney Shay Zuckerman represented me in Israel. They took court papers with attorney/client privileges.
11. Life insurances information
12. Camera from a car
13. Mail/correspondence of Anna Jurivan and/or Non Debtors

## Property of Anna Juravin

1.  My personal flower leather bag instead of using a box

2. Lagos obsidian bracelet with sentimental value
3. Personal pictures from Poland
4. Intimate pictures

# FAMILY & CATS

1. Kids' medical records
    a. Immunization records
    b. Check ups
2. Cats' medical records - Immunization records and veterinarian records
3. Receipts from kids' school
4. Children's care authorization
5. Family health insurance records
6. Family health records
7. Durable POA notarized documents
8. James Ryan took letters that he and sent to us
9. All correspondence form Bella Collina was taken
10. Tax documents

# HOLY LAND MINISTRY

1. Company's bylaws
2. Minutes meetings

# GLOBESITY FOUNDATION

1. Company's bylaws
2. Minutes meetings

# UMGI

1. Bank information + statements + checks
2. Company's documents:
   a. Bylaws
   b. Shareholders certificate
   c. Minutes meetings
   d. Board of Director agreements
   e. Employment agreements
   f. Sale and purchase of UMGI
   g. PPP loan documents
   h. Articles of incorporation

# Exhibit B – Court Cases

1. 2020-CC-003290  filed on 08/13/2020 in Lake county court, Plaintiffs Bella Collina POA, Club at Bella Collina

2. 35-2017-CA-000979 filed on 05/30/2017 in Lake county court, Plaintiffs Bella Collina POA and Wilmington as successor Counter-Plaintiff

3. 2020-DR-002259 (family court) filed 10/09/2020 in Lake county court, James Ryan intervened on behalf of Trustee

4. 35-2021-CA-000227 filed on 02/05/2021 in Lake county court, Plaintiff PSR DEVELOPERS LLLP

5. 35-2017-CA-000667-A filed on 04/12/2017 in Lake county court, Plaintiffs DCS & Club at Bella Collina, James Ryan filed an appearance as co-counsel on behalf of DCS

6. 35-2017-SC-004004-A filed on 11/20/2017 in Lake county court, Plaintiffs Bella Collina POA

7. 35-2019-CA-000697 filed on 03/28/2019 in Lake county court, Plaintiffs Bella Collina POA

8. 2077CV00687 filed on 07/16/2020 in Massachusetts Superior court, Plaintiffs DCS and Club at Bella Collina